UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CASE NO.:

ANIBAL CARRION,

    Plaintiff,

v.

SUDDATH VAN LINES, INC.,
a Florida Profit Corporation,

    Defendant.
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, ANIBAL CARRION ("Mr. Carrion" or "Plaintiff") files this Complaint against Defendant, SUDDATH VAN LINES, INC., ("SUDDATH" or "Defendant"), and states as follows:

## INTRODUCTION

1. Plaintiff brings this action pursuant to the Family and Medical Leave Act, as amended, 29 U.S.C. § 2601, et seq. ("the FMLA") and Chapter 760 of the Florida Civil Rights Act ("FCRA") to recover from Defendant back pay, an equal amount as liquidated damages, other monetary damages, equitable relief, front pay, declaratory relief, compensatory damages, punitive damages, and reasonable attorneys' fees and costs.

**JURISDICTION, VENUE AND FMLA COVERAGE**

2. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1337 and the FMLA and the authority to grant declaratory relief under the FMLA, and pursuant to 28 U.S.C. § 2201 *et seq*.

3. This Court also has supplemental jurisdiction over Plaintiff's FCRA claims, as they arise out of the same operative facts and circumstances as his FMLA claims.

4. At all times relevant hereto, Plaintiff was an employee of Defendant, and resided in Duval County, Florida.

5. Plaintiff worked for Defendant in Duval County, Florida, and this venue, therefore is proper.

6. Defendant is a Florida profit corporation located in Jacksonville, Duval County, Florida, that provides shipping services in, among other places, Duval County, Florida, and is therefore within the jurisdiction of the Court.

7. At all times relevant hereto, Defendant was an employer covered by the FMLA, because it was engaged in commerce or in an industry affecting commerce that employed 50 or more employees within 75 miles of where Plaintiff worked, for each working day during each of 20 or more calendar workweeks, prior to seeking leave under the FMLA.

8. At all times relevant hereto, Plaintiff was an employee entitled to leave under the FMLA, based on the fact that he: (a) suffered from a serious health condition as defined by the FMLA which necessitated FMLA leave; and (b) was employed by Defendant for at least 12 months and worked at least 1,250 hours during the relevant 12-month period prior to him seeking to exercise his rights to FMLA leave.

9. Plaintiff is a disabled male. At all times material, Plaintiff was protected during his employment with Defendant by the FCRA because:

   a. Plaintiff was a disabled or "perceived as disabled" employee who suffered discrimination and harassment because of his disability or "perceived disability" by Defendant; and

   b. Plaintiff suffered an adverse employment action and was subjected to an increasingly hostile work environment as a result of his disability or "perceived disability."

10. Defendant was at all times an "employer" as envisioned by §760.02(7), Fla. Stat.

## CONDITIONS PRECEDENT

11. On or around June 10, 2020, Plaintiff dual-filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission

("EEOC") and Florida Commission on Human Relations ("FCHR") alleging disability discrimination against Defendant.

12. More than 180 days have passed since the filing of the Charge of Discrimination.

13. Plaintiff timely files this action within the applicable period of limitations against Defendant.

14. All conditions precedent to this action have been satisfied and/or waived.

## FACTUAL ALLEGATIONS

15. Plaintiff worked for the Defendant, most recently as a Heavy Equipment Operation/Driver, from October 12, 2012, until his termination on April 10, 2020.

16. Mr. Carrion was an excellent employee, with no significant history of attendance, performance or disciplinary issues.

17. On March 14, 2020, Mr. Carrion returned from a trip to the U.S. Virgin Islands, where he had attended his sister's funeral.

18. Mr. Carrion reported back to work at SUDDATH on March 16, 2020.

19. Mr. Carrion fell ill while at work on March 17, 2020.

20. Mr. Carrion's Supervisor, Maryen George, noticed that Mr. Carrion was not well, and sent him home that day.

21. On March 17, 2020, Mr. Carrion went to the hospital, and was diagnosed with a disability and serious health condition, specifically pneumonia.

22. Mr. Carrion tested negative for the corona/COVID-19 virus while hospitalized.

23. SUDDATH sent FMLA paperwork to Mr. Carrion's home, without being asked to do so.

24. Mr. Carrion filled out the FMLA paperwork and promptly submitted it to SUDDATH.

25. One of Mr. Carrion's Supervisors, Michael Valnoha, made it clear to Mr. Carrion that Mr. Carrion would have to speak with Ana O'Dell in SUDDATH's Human Resources Department before Mr. Carrion would be permitted by SUDDATH to return to work after his bout with pneumonia.

26. On or about April 6, 2020, Mr. Carrion's direct Supervisor, Maryen George, advised Mr. Carrion that Mr. Valnoha was demanding that Mr. Carrion provide all possible details of his disability and serious health condition to SUDDATH, including details of his medications and of his medical records.

27. Also on or about April 6, 2020, Mr. Carrion's treating physician provided SUDDATH medical certification pertaining to Mr. Carrion's FMLA leave.

28. On or about this same date, April 6, 2020, Mr. Carrion's treating physician also provided to SUDDATH documentation confirming that Mr. Carrion

was again in sound health and that he was ready to return to work from his brief period of continuous unpaid FMLA leave.

29. Nevertheless, SUDDATH insisted that Mr. Carrion have his treating physician provide a so-called "Fitness for Duty" form to SUDDATH.

30. Mr. Carrion's treating physician completed the "Fitness for Duty" form and the form was submitted to SUDDATH on April 8, 2020.

31. On that same day, April 8, 2020, Mr. Carrion received confirmation from Melissa Dore, a representative of SUDDATH's third-party benefits coordinator, that he could return to work the next day.

32. On April 9, 2020, Mr. Carrion therefore reported to work on SUDDATH's premises.

33. However, on April 9, 2020, Mr. Valnoha sent Mr. Carrion home, incorrectly stating, "I didn't receive any clearance for you to return to work, Anibal."

34. Mr. Carrion advised Ms. Dore of what Mr. Valnoha told him.

35. SUDDATH stated that Mr. Carrion could return to work on April 10, 2020.

36. Between April 9, 2020, and April 13, 2020, SUDDATH made two (2) changes to Mr. Carrion's scheduled start time.

37. Mr. Carrion's start time had been the same for the prior eight (8) years prior to these manipulations.

38. Mr. Carrion remarked to Ms. George that it appeared that Mr. Valnoha was retaliating against him for using FMLA leave, and discriminating against him based on his disability.

39. Ms. George, whose start time had also been changed, agreed with Mr. Carrion's conclusion.

40. On April 14, 2020, SUDDATH sent Mr. Carrion a so-called "Exit Interview" link via electronic mail, making it clear that SUDDATH had terminated Mr. Carrion's employment, effective immediately.

41. As a result of the foregoing, Defendant interfered with Plaintiff's FMLA rights, and retaliated against him for utilizing unpaid FMLA leave to treat and address his serious health condition.

42. As a result of this illegal conduct, Plaintiff has suffered damages, including loss of employment, wages, benefits, and other remuneration to which he is entitled.

43. Moreover, because Defendant acted with intent to interfere with, and otherwise retaliate against Plaintiff for him for his use of protected FMLA leave, Defendant's actions likewise constitute FMLA retaliation.

44. The timing of Plaintiff's use of protected FMLA leave, and Defendant's termination of his employment, alone demonstrates a causal connection between his protected FMLA leave and these illegal actions taken by Defendant against him.

45. Defendant's stated reason for Plaintiff's termination is a pretext for FMLA interference and retaliation.

46. Defendant purposefully and intentionally interfered with, and retaliated against Plaintiff, for suffering a serious health condition and disclosing to Defendant need for unpaid FMLA leave in order to treat and address the condition.

47. Defendant did not have a subjective or objective good faith basis for its actions, and Plaintiff is therefore entitled to liquidated damages.

48. Mr. Carrion is an individual with a disability who was fully capable of performing the essential functions of his job as a Heavy Equipment Operator/Driver.

49. SUDDATH's discriminatory/retaliatory treatment, which resulted in Mr. Carrion's termination, violated the FMLA and the FCRA.

50. By reason of the foregoing, Defendant's actions, and non-actions, affected the "terms, conditions or privileges" of Plaintiff's employment as envisioned by the Florida Civil Rights Act.

51. Mr. Carrion's termination stemmed from Defendant's discriminatory animus toward his use of FMLA leave and his suffering a disability under the FCRA.

52. The timing of Plaintiff's adverse employment action makes the causal connection between his use of FMLA, his disclosure of his disability under the FCRA, and his adverse employment action sufficiently clear.

53. Any other reason given for Plaintiff's termination is a pretext, designed to cover up FMLA interference and retaliation and disability discrimination.

54. Defendant's actions are the exact type of unfair and retaliatory employment practices the FCRA and FMLA were intended to prevent.

55. Additionally, the facts surrounding Plaintiff's adverse employment action also create a strong inference of disability discrimination in violation of the FCRA.

56. The Defendant was aware of Plaintiff's FCRA-protected medical condition and potential need for accommodation.

57. Defendant, however, being well-aware of Plaintiff's condition, discriminated against Plaintiff for being out of work (on job-protected FMLA leave) to seek treatment for his disability.

58. Defendant's termination of Mr. Carrion's employment occurred under circumstances that raise a reasonable inference that Mr. Carrion's disability was a determining factor in the decision to terminate his employment. *See Stansberry v. Air Wisc. Airlines Corp.*, 651 F.3d 482, 487 (6th Cir. 2011).

59. At all material times hereto, Plaintiff was ready, willing and able to perform his job duties and otherwise qualified for his position, with "reasonable accommodation."

60. Defendant perceived Plaintiff as being "disabled," and therefore, unable to perform the essential functions of his position, despite the fact that Plaintiff could perform same with or without reasonable accommodation.

61. Pleading in the alternative, Plaintiff's impairment did not substantially limit a major life activity but was treated by Defendant as if it did.

62. Pleading in the alternative, Plaintiff's medical condition constituted an impairment that limited a major life activity only because of Defendant's attitude toward the impairment.

63. Pleading in the alternative, Plaintiff had no impairment, whatsoever, but was treated by Defendant as having a disability as recognized by the FCRA.

64. Plaintiff suffered sufficiently severe and pervasive treatment, and ultimately was terminated, because of his disability and/or "perceived disability."

65. As a result of this illegal conduct, Plaintiff has suffered damages, including loss of employment, wages, benefits, and other remuneration to which he is entitled.

66. Plaintiff has retained the law firm of RICHARD CELLER LEGAL, P.A., to represent him in the litigation and has agreed to pay the firm a reasonable fee for its services.

## COUNT I
## UNLAWFUL INTERFERENCE UNDER THE FMLA

67. Plaintiff reincorporates and readopts all allegations contained within Paragraphs 1 through 8, 13 through 47, 49, 51 through 54, 57, and 65 through 66, above, as if fully set forth herein.

68. At all times relevant hereto, Plaintiff was protected by the FMLA.

69. At all times relevant hereto, Defendant interfered with Plaintiff by having an aggressive and hostile demeanor in response to Plaintiff's disclosure of his serious health condition, by sending him FMLA paperwork, unasked, in response to his disclosure of his serious health condition, by requiring superfluous "Fitness for Duty" forms in addition to proper FMLA medical certification, and by refusing to allow Plaintiff to exercise his FMLA rights freely.

70. At all times relevant hereto, Plaintiff was protected from interference under the FMLA.

71. As a result of Defendant's willful and unlawful acts by interfering with Plaintiff for exercising his rights pursuant to the FMLA, Plaintiff has suffered damages and incurred reasonable attorneys' fees and costs.

72. As a result of Defendant's willful violation of the FMLA, Plaintiff is entitled to liquidated damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant for back pay, an equal amount as liquidated damages, other monetary damages, equitable relief,

declaratory relief, reasonable attorneys' fees and costs, and any and all further relief that this Court determines to be just and appropriate.

## COUNT II
## UNLAWFUL RETALIATION UNDER THE FMLA

73. Plaintiff reincorporates and readopts all allegations contained within Paragraphs 1 through 8, 13 through 47, 49, 51 through 54, 57, and 65 through 66, above, as if fully set forth herein.

74. At all times relevant hereto, Plaintiff was protected by the FMLA.

75. At all times relevant hereto, Defendant retaliated against Plaintiff by manipulating his schedule cynically upon his return from unpaid FMLA leave, by requiring superfluous "Fitness for Duty" forms in addition to proper FMLA medical certification, and by firing him for his disclosing his serious health condition and for utilizing FMLA protected leave.

76. At all times relevant hereto, Plaintiff was protected from retaliation under the FMLA.

77. At all times relevant hereto, and for purposes of the FMLA retaliation claim, Defendant acted with the intent to retaliate against Plaintiff, because Plaintiff exercised his rights to take approved leave pursuant to the FMLA.

78. As a result of Defendant's intentional, willful and unlawful acts by retaliating against Plaintiff for exercising his rights pursuant to the FMLA, Plaintiff has suffered damages and incurred reasonable attorneys' fees and costs.

79. As a result of Defendant's willful violation of the FMLA, Plaintiff is entitled to liquidated damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant for back pay, an equal amount as liquidated damages, other monetary damages, equitable relief, declaratory relief, reasonable attorneys' fees and costs, and any and all further relief that this Court determines to be just and appropriate.

## COUNT III
## DISCRIMINATION UNDER THE FLORIDA
## CIVIL RIGHTS ACT BASED ON DISABILITY

80. Plaintiff realleges and adopts the allegations contained within paragraphs 1 through 6, 9 through 22, 25 through 40, 42, and 48 through 66, above, as if fully set forth herein.

81. The acts of Defendant, by and through its agents and employees, violated Plaintiff's rights against disability discrimination under the FCRA.

82. The discrimination to which Plaintiff was subjected was based on his disability and/or "perceived disability."

83. Plaintiff has suffered damages as a result of Defendant's illegal conduct toward him.

84. The conduct of Defendant was so willful, wanton, and in reckless disregard of the statutory rights of Plaintiff, as to entitle him to an award of punitive damages against Defendant, to deter it, and others, from such conduct in the future.

85. Plaintiff is entitled to recover reasonable attorneys' fees and litigation expenses pursuant to Section 760.11(5), Florida Statutes.

**WHEREFORE**, Plaintiff requests a judgment in his favor and against Defendant for his actual and compensatory damages, including, but not limited to, front pay, back pay, emotional distress damages, and punitive damages, as well as his costs and attorneys' fees, declaratory and injunctive relief, and such other relief as is deemed proper by this Court.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

DATED this 30th day of April, 2021.

Respectfully Submitted,

**By:** */s/ Noah Storch*
Noah E. Storch, Esq.
Florida Bar No. 0085476
RICHARD CELLER LEGAL, P.A.
10368 W. SR 84, Suite 103
Davie, Florida 33324
Telephone: (866) 344-9243
Facsimile: (954) 337-2771
E-mail: noah@floridaovertimelawyer.com